UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: TEXAS REDS, INC.,                                    No. 11-04-15995 JA

Debtor.

## MEMORANDUM OPINION

THIS MATTTER is before the Court on the Motion for Summary Judgment ("Motion") filed by Alan and Jeannine Bender (together, the Benders), by and through their attorneys of record, Aldridge, Grammer, Jefffrey & Hammar, P.A. (Kevin D. Hammar). The Chapter 7 Trustee filed a response in opposition to the Motion, and the Benders filed a reply. *See* Docket No. 316 and Docket No. 317. The Court heard oral argument on the Motion on November 30, 2009 and took the matter under advisement. Upon review of the arguments of counsel and the applicable law, the Court finds that Motion should be granted.

BACKGROUND AND SUMMARY OF THE PARTIES' POSITIONS

The Benders were the assignees of the sellers' interest under a real estate contract for the sale of certain real property, known as the 301 Jayhawk Property ("Property") to the Debtor. The Chapter 7 Trustee eventually sold the Property for $115,000.00, and distributed $72,673.55 from the proceeds to the Benders at closing. *See* Order Granting Trustee's Amended Motion to Approve Sale of 301 Jayhawk Property to Jim and Mandi Hollis Free and Clear of Liens and to Approve Payment of Compensation to Realtors ("Sale Order"), Docket No. 293. Pursuant to the Sale Order $11,500.00 from the proceeds of the sale were placed in a trust account pending further order of the Court as to how those funds should be distributed. *Id.* The Benders filed a Motion to Compel Distribution of the funds. (Docket No. 298). The Chapter 7 Trustee, and

North Country Real Estate, Inc., together with Stanley R. Samuels, each filed an objection. *See* Docket No. 302 and Docket No. 303.

At issue is whether the Benders are entitled to the funds held in trust by virtue of the terms of the Real Estate Contract which provided that the purchaser would pay $11,500.00, representing the balance owing on the down payment, on or before July 1, 1998. It is undisputed that the Debtor, as purchaser under the Real Estate Contract, has not tendered payment of the $11,500.00. The Benders assert that they are entitled to a distribution of the $11,500.00 held by the Trustee as a matter of law because they have performed their obligations under the Real Estate Contract. The Benders never fully exercised the default provisions provided under the Real Estate Contract to collect the $11,500.00 or forfeit the Debtor's interest in the Property as a result of nonpayment. The Trustee, North Country Real Estate, Inc., and Stanley R. Samuels contend that the six year statute of limitations on actions for breach of contract bars the Benders' entitlement to recovery of the $11,500.00, and that, alternatively, even if the statute of limitations has not expired, the Benders' claim is barred under the doctrines of waiver, laches and/or estoppel.[1]

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P., made applicable to bankruptcy proceedings by Rule 7056, Fed.R.Bankr.P. The party requesting

---

[1] North County Real Estate, Inc. and Stanley R. Samuels also assert that the Benders' claim is unenforceable because they did not file a proof of claim. *See* Objections to Bender's [sic] Motion to Compel Distribution ("Samuels Objection"). Because the Debtor assumed the Real Estate Contract (*See* Agreed Order for Conditional Relief from Stay and Assumption of Real Estate Contract (Docket No. 148)), it was not necessary for the Benders to file a proof of claim; *rejection* of an executory contract triggers the need to file a proof of claim. *See* 11 U.S.C. § 502(g)(1)("A claim arising from the rejection . . . of an executory contract . . . that has not been assumed . . ."). *See also, Shaw v. Dawson,* 48 B.R. 857 (D.N.M. 1985)(holding that a real estate contract is an executory contract under New Mexico law that required assumption or rejection under the bankruptcy code); *Public Service Co. of New Hampshire v. New Hampshire Electric Coop. (In re Public Service Co. of New Hampshire),* 884 F.2d 11, 14 (1st Cir. 1989)(noting that "[i]f and when [an executory contract is] assumed, the contract operates according to its tenor.").

2

summary judgment must demonstrate to the Court that the undisputed facts entitle the movant to judgment as matter of law.[2] The party opposing summary judgment may not rest upon allegations or denials contained in its own pleading, but must "set out specific facts showing a genuine issue for trial." Rule 56(e)(2), Fed.R.Civ.P. The Benders point out that the Chapter 7 Trustee has neither disputed their statement of material facts nor set out specific facts that establish a genuine fact issue for trial. Instead, the Chapter 7 Trustee has asked the Court to consider certain additional material facts in light of her arguments of law. The Benders do not object to the Chapter 7 Trustee's additional facts.

In this case, the undisputed facts, including the documents filed of record in the Debtor's bankruptcy case[3], are sufficient for the Court to make a determination as a matter of law.[4] Those undisputed facts are:

1. On or about February 24, 1998, Texas Reds, Inc. ("Purchaser") entered into a Real Estate Contract to purchase the Property.

2. Paragraph 2 of the Real Estate Contract required the Purchaser to make the following payments:

   The Purchaser agrees to buy the above described property and to pay Seller therefore the total sum of ONE HNDRED TWENTY FIFE THOUSAND AND NO/100 Dollars ($125,000.00) payable as follows: THIRTEEN THOUSAND FIVE HUNDERD AND NO/100 Dollars ($13,500.00) cash down payment, the receipt of

---

[2] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). ("[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact.").

[3] The Court can take judicial notice of the documents filed in the bankruptcy case. *See Job v. Calder (In re Calder),* 907 F.2d 953, 955 n.2 (10th Cir. 1990)(stating that "Under Fed.R.Evid. 201(b)(2), which is made applicable in bankruptcy cases, *see* Bankruptcy Rule 9017, a court may take judicial notice of facts that are not subject to reasonable dispute in that they are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned[ ]'" and finding that the bankruptcy court's judicial notice of the contents of the debtor's statements and schedules was consistent with Fed.R.Evid. 201(b)(2)).

[4] *See In re Hiseman*, 330 B.R. 251, 255 (Bankr.D.Utah 2005) (stating that because " 'no issue of fact remains to be determined, the court has the power to decide the questions of law and enter summary judgment thereon." ')(quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.1999)).

which is hereby acknowledged, and the balance of ONE HUNDRED THOUSAND AND NO/100 Dollars ($100,000.00) payable as follows:

$11,500.00, representing the balance owing of the down payment, payable in full on or before July 1, 2998.

$100,000.00, the amount of this Real Estate Contract, which Purchasers agree to pay in monthly installments of $965.08 each or more, including interest from January 1, 1998 at the rate of 10% per annum. The first payment shall be due on February 1, 1998 with like installments due and payable on the 1st succeeding month thereafter until paid in full.

A late charge of 10% of the monthly installment will be due on any payment made ten (10) calendar days past due, irrespective of weekends and holidays. The time period before the late charge becomes due shall not be considered a grace period.

The payments as above provided shall be paid to the escrow agent and continue until the entire unpaid balance of the purchase price (exclusive of any prior lien or obligation being assumed) plus any accrued interest due to the seller is fully paid. Said unpaid balance shall bear interest at the rate of ten percentum (10% per annum from the effective date January 1, 1998.

3. Paragraph 4 of the Real Estate Contract provides:

> Purchaser shall be entitled to take possession of the Property and retain possession unless and until Purchaser's interests under this Contract shall be terminated by Seller as provided in Paragraph 5 below. Legal title to the Property shall remain in the Seller's name until this contract has been fully performed upon the part of the Purchaser and the Warranty Deed delivered as specified.

4. Paragraph 9(c) of the Real Estate Contract provides:

> Upon full payment of all amounts due and owing to the Seller under this Contract by the Purchaser, the Escrow Agent is directed to release and deliver the escrow documents to the Purchaser.

5. Paragraph 5 of the Real Estate Contract contains the default provisions. It provides, in relevant part:

> (a) Default Notice. Time is of the essence in this contract, meaning that the parties shall perform their respective obligations within the times stated. If Purchaser fails to make any of the payments required in Paragraph 2, herein,

4

>   > at the times specified, . . . the Seller may make written demand upon the Purchaser, . . .
>   >
>   > . . . .
>   >
>   > (b) Purchaser's Failure to Cure Default Results in Termination of Contract or Acceleration of Entire Unpaid Balance.
>   > If the Purchaser fails or neglects to cure any default within thirty (30) days after the date Seller's default notice is mailed, then the Seller may, at his option, either declare the whole amount remaining unpaid to be then due and proceed to enforce payment of the entire remaining unpaid balance, plus any accrued interest, . . . or he may terminate Purchaser's rights to the Property and retain all sums paid as liquidated damages to that date for the Use of the Property, and all rights of Purchaser in the Property shall thereupon end.

6. Purchaser failed to make the $11,500.00 payment required under Paragraph 2 of the Real Estate Contract.

7. The Benders acquired the seller's interest under the Real Estate Contract by assignment dated May 31, 2005.

8. Purchaser filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 16, 2004.

9. Richard J. Parmley was appointed as Chapter 11 Trustee on May 11, 2006. *See* Order Approving Appointment of a Chapter 11 Trustee (Docket No. 111).

10. On March 22, 2007, the Benders filed a motion to require the Chapter 11 Trustee and the Debtor to assume or reject the Real Estate Contract as an executory contract. *See* Motion to Require Trustee and Debtor to Assume or Reject Executory Contract ("Motion to Assume or Reject") (Docket No. 128). The Chapter 11 Trustee and International Bank each filed an objection to the Motion to Assume or Reject. (*See* Docket No. 136 and Docket No. 134).

11. On the same date, the Benders also filed a motion to modify the automatic stay to allow them to proceed with their remedies under the Real Estate Contract. *See* Motion by Alan L. and Jeannine Bender to Lift Stay ("Motion to Lift Stay") (Docket No. 130). The Chapter 11 Trustee and International Bank each filed an objection to the Motion to Lift Stay. (*See* Docket No. 137 and Docket No. 135).

12. The Motion to Lift Stay asserts the following:

> [t]he Debtor has been in default since the April 1, 2005 payment and the 2004 and 2006 property taxes are delinquent. The principal balance under the REC as of March 9, 2007 is $85,835.78, plus the balance of the down payment in the amount of $11,500.00, plus accrued interest in the amount of $4,701.54, plus current late charges in the amount of $1,254.63, plus unpaid interest in the amount of $985.91, plus interest thereon from March 9, 2007 until paid at the rate of $23.52 per diem (10% per annum). No post-petition payments have been made since March 1, 2006. The Debtor has failed to continue to make any post-petition payments, in violation of the terms of the REC, and is currently in default for twelve (12) months.

> Motion to Lift Stay, ¶ 6.

13. On June 21, 2007, the Benders, International Bank, and the Chapter 11 Trustee entered into an Agreed Order for Conditional Relief from Stay and Assumption of Real Estate Contract ("Agreed Stay Relief Order"). (Docket No. 148).

14. The Agreed Stay Relief Order included the following provisions:

> Debtor is in default under the REC.
>
> The Debtor/Trustee may retain the Property by:
>
> a. Paying $5,000 on or before June 8, 2007;
> b. Resuming the regular monthly payment beginning with the July 1, 2007 payment; and
> c. Paying current all the delinquent REC payments and late charges or paying Creditor the full balance owed under the REC within six (6) months from the entry of this Order.
>
> Agreed Stay Relief Order, ¶¶ 4 and 5.

6

15. On or about January 15, 2008, the Benders filed a Notice of Default in the Debtor's bankruptcy case, asserting that the Debtor/Trustee failed to bring current all delinquent REC payments and late charges as required under the Agreed Stay Relief Order. (Docket No. 182).

16. The case converted to Chapter 7 on or about June 4, 2008 and Yvette J. Gonzales was appointed as Chapter 7 Trustee. *See* Order of Conversion (Docket No. 208) and Amended Order of Conversion (Docket No. 210).

17. On or about the same date, the Benders' counsel sent a Notice of Default of Real Estate Contract letter ("Default Letter") to the Purchaser. *See* Exhibit F admitted into evidence at the final hearing on the Motion.

18. The Default Letter made demand for payment of the following amounts: (a) the amount due for the May 1 and June 1, 2008 payments; (b) applicable late charges per the Real Estate Contract; and (c) $125.00 for the sellers' attorney's fees per the Real Estate Contract. *Id.*

19. On December 29, 2008, the Chapter 7 Trustee filed a motion to approve the sale of the Property to Jim and Mandi Hollis. *See* Motion to Approve Sale of 301 Jayhawk Property to Jim and Mandi Hollis Free and Clear of Liens and to Approve Compensation to Realtors (Docket No. 262). The Chapter 7 Trustee filed an amended motion to approve the sale on January 6, 2009. (Docket No. 265).

20. The Sale Order approving the sale of the Property was entered on February 6, 2009. (Docket No. 293).

21. The Sale Order acknowledged the existing dispute, and directed that $11,500.00 from the proceeds of the sale be placed in the trust account of the Trustee or the attorney

7

for the Trustee pending further order from the Court directing distribution of the funds. *See* Sale Order, ¶ i.

## APPLICABLE LAW

New Mexico adheres to the black letter rule of law that a cause of action for breach of contract accrues, and the statute of limitations begins to run, upon default.[5] The applicable statute of limitations for actions to recover on a claim for breach of contract is six years.[6] In this case, the Trustee asserts that the cause of action to collect on the unpaid balance of the down payment accrued on July 1, 1998 when that payment became due under the terms of the Real Estate Contract, and that the statute of limitations expired six years thereafter, on July 1, 2004. This Court disagrees.

The statute of limitations is an affirmative defense to payment and does not serve to extinguish the debt. *See Joyce-Pruit Co. v. Meadows,* 27 N.M. 529, 531, 203 P. 537, 538 (1921)("The statute [of limitations] does not cancel the debt, but merely bars the remedy. The obligation itself continues."). Under the New Mexico revival statute, codified at N.M.S.A. 1978 § 37-1-16, a cause of action otherwise barred by the applicable period of limitations is revived when the party to be charged with the debt agrees in writing that the debt is owed. N.M.S.A. 1978 § 37-1-16 ("Causes of action founded upon contract shall be revived . . . by an admission

---

[5]*See Welty v. Western Bank of Las Cruces,* 106 N.M. 126, 127, 740 P.2d 120, 122 (1987)("In a breach of contract action, the statute of limitations begins to run from the time of the breach.")(citing *Smith v. Galio,* 95 N.M. 4, 6, 617 P.2d 1325, 1327 (Ct.App. 1980)(remaining citation omitted)); *Buss v. Kemp Lumber Co.,* 23 N.M. 567, 568, 170 P.54, 55 (1918)(concluding that "the statute of limitations began to run . . . upon the default in payment . . .").
[6]*See* N.M.S.A. 1978 § 37-1-3 (Repl. Pamp. 1990), which provides, in relevant part:

> A. Those founded upon any . . . contract in writing . . . within six years.
>   If the payee of any . . . contract in writing . . . enters into any contract or agreement in writing to defer the payment thereof, or contracts or agrees not to assert any claim against the payor or against the assets of the payor until the happening of some contingency, the time during the period from the execution of such contract or agreement and the happening of such contingency shall not be included in computing the six year period of limitation above provided.

N.M.S.A. 1978 § 37-1-3(A) (Repl. Pamp. 1990).

8

that the debt is unpaid, . . . but such admission . . . must be in writing and signed by the party to be charged therewith.")[7] Once the cause of action is revived, a new limitations period begins to run from the date of revival. N.M.S.A. 1978 § 37-1-16 ("Such a case of action shall be deemed to have accrued upon the date of such . . . admission of indebtedness or promise to pay.").

To satisfy the New Mexico revival statute, no particular language is required. *Marine Trust Co. of Buffalo, New York v. Lord,* 51 N.M. 323, 325, 184 P.2d 114, 115 (1947). "It is enough if [the writing] shows the writer has treated the indebtedness as subsisting and one for which he is liable and willing to pay." *Id.* The revival statute

> does not require that the admission be one upon which the law implies a promise nor that it acknowledge a present existing liability. All that it requires is an admission that the debt is unpaid and if that is made the statute is satisfied.
>
> *Joyce-Pruit v. Meadows,* 27 N.M. at 530, 203 P. at 538.

Thus to constitute a revival, it is "not essential . . . that the admission be couched in precise and direct terms." *Reymond v. Newcomb,* 10 N.M. 151, 152, 61 P. 205, 206 (1900)(citation omitted). A contract is revived if the admission is "unconditional, unlimited, and reasonably certain." *Id.*

In this case, the Agreed Stay Relief Order constituted an acknowledgement by the Purchaser in writing that the debt was not paid, and served to revive the Benders' cause of action to collect on the unpaid balance of the down payment. The Agreed Stay Relief Order, entered on June 21, 2007, acknowledged that the Debtor was in default under the Real Estate Contract, and required as a condition to the Debtor retaining the property that the Debtor/Trustee: a) pay

---

[7] That section provides, in relevant part:
> Causes of action founded upon contract shall be revived by the making of any partial or instalment [sic.] payment thereon or by an admission that the debt is unpaid, as well as by a new promise to pay the same; but such admission or new promise must be in writing signed by the party to be charged therewith. Such a cause of action shall be deemed to have accrued upon the date of such partial or installment payment, admission of indebtedness or promise to pay.

N.M.S.A. 1978 § 37-1-16 (Repl. Pamp. 1990).

9

$5,000 on or before June 8, 2007; b) resume the regular monthly payments beginning with the July 1, 2007 payment; and "[p]ay[ ] current **all** the delinquent REC payments and late charges or paying Creditor **the full balance owed under the REC** within six (6) months from the entry of the Order." Agreed Stay Relief Order, ¶¶ 4 and 5 (emphasis added). The Chapter 11 Trustee, the Benders, and International Bank entered into the Agreed Stay Relief Order to resolve the pending Motion to Lift Stay and the pending Motion to Assume or Reject. The Motion to Lift Stay clearly identified the delinquent down payment in the amount of $11,500.00 as unpaid. Read together with the Motion to Lift Stay, the Agreed Stay Relief Order is an admission by the Purchaser that the debt, including the $11,500.00 down payment, is unpaid and must be paid for the Purchaser to retain the Property. The Agreed Stay Relief Order, which was entered into by the Chapter 11 Trustee, remains binding on the Chapter 7 Trustee upon conversion of the case.[8] The admission that the debt is unpaid contained in the Agreed Stay Relief Order is reasonably clear, unlimited, and without condition, and is sufficient to satisfy the New Mexico revival statute. Upon revival, a new limitations period began to run as of June 21, 2007. Consequently, the Benders' cause of action to recover the unpaid balance of the down payment is not barred by the statute of limitations.

The Chapter 7 Trustee contends that, even if the statute of limitations does not bar the Benders' recovery, equitable defenses, such as waiver, laches, or estoppel preclude the Benders' entitlement to the $11,500.00. The Court finds that none of these equitable defenses bars the Benders' claim. Under New Mexico law, implied waiver, or "[w]aiver by acquiescence 'arises

---

[8] *See In re MS55, Inc.,* 477 F.3d 1131, 1135 (10th Cir. 2007)(acknowledging the "well established" rule of law "that a Chapter 7 trustee succeeds to the rights of the debtor-in-possession and is bound by prior actions of the debtor-in-possession to the extent approved by the court.")(citing *Paul v. Monts,* 906 F.2d 1468, 1473 (10th Cir. 1990)); *In re Buzzworm, Inc.,* 178 B.R. 503, 508 (Bankr.D.Colo. 1994)("A Chapter 11 debtor-in-possession can enter into a binding agreement with a secured creditor, which will be enforceable against a subsequently appointed Chapter 7 trustee.")(citing *Armstrong v. Norwest Bank, Minneapolis, N.A.,* 964 F.2d 797, 801 (8th Cir. 1992)(remaining citations omitted). Under 11 U.S.C. § 1107, "a debtor in possession shall have all the rights . . . of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a).

10

when a person knows he is entitled to enforce a right and neglects to do so for such a length of time that under the facts of the case the other party may fairly infer that he has waived or abandoned such right.'" *Magnolia Mountain Ltd. P'ship v. Ski Rio Partners,* 139 N.M. 288, 296, 131 P.3d 675, 683 (Ct.App. 2005)(quoting *Sizneroz v. Polanco,* 1999-NMCA-039, ¶ 16, 126 N.M. 779, 975 P.2d 392 (Ct.App. 1999)(internal quotation marks and citation omitted)). The facts of this case do not indicate that the Benders', or their predecessors', failure to demand payment of the balance of the down payment constituted an implied waiver from which the Purchaser, or that the Trustee could fairly infer that such right was abandoned. The Benders, and their predecessors, allowed the Purchaser to continue in possession of the Property during the time the Purchaser made sporadic monthly payments under the terms of the Real Estate Contract. As sellers under the Real Estate Contract, it is not unreasonable for them to expect to receive the full purchase price before granting title to the Property to the Purchaser. Likewise, the Purchaser should fairly expect to pay the agreed upon purchase price before obtaining title.

"[L]aches is not favored absent inexcusable neglect." *Cave v. Cave,* 81 N.M. 797, 802, 474 P.2d 480, 485 (1970)(citing *Pratt v. Parker,* 57 N.M. 103, 111, 255 P.2d 311 (1953)). The party claiming the defense of laches must demonstrate the following:

> (1) Conduct on the part of the defendant, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy;
> (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit;
> (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right in which [he/she] bases [his/her] suit; and
> (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred.
>
> *Garcia v. Garcia,* 111 N.M. 581, 588, 808 P.2d 31, 38 (1991)(quoting *Baker v. Benedict,* 92 N.M. 283, 286, 587 P.2d 430, 433 (1978) and *Cave v. Cave,* 81 N.M. at 802-803, 474 P.2d at 485- 86). *See also, Magnolia Mountain v. Ski Rio Partners,* 139 N.M. at 297, 131 P.3d at 684 (same).

11

Here, the Trustee has not demonstrated that she had no knowledge that the Benders would forego their claim to full payment under the terms of the Real Estate Contract. To the contrary, her predecessor assumed the Real Estate Contract. Nor has the Trustee shown sufficient prejudice if the Benders are not barred recovery. "[T]o support a defense of laches, the prejudice alleged must be a result of the delay itself, not merely a result of the suit being brought or the defendant losing the suit." *Magnolia Mountain,* 139 N.M. at 297, 131 P.3d at 684 (citations omitted). The Benders delayed declaring a default under the terms of the Real Estate Contract and demanding payment of all amounts due thereunder, including the balance of the down payment. This did not result in any legal prejudice. In fact, it benefitted the Debtor as Purchaser under the Real Estate Contract, and the Chapter 7 Trustee by allowing them to retain equitable title to the Property.

Finally, estoppel principles do not bar the Benders' recovery. Estoppel, as distinguished from laches, "focuses on the acts of the party asserting estoppel, so that the trial court can evaluate whether that party relied to its detriment on the acts of the party against whom the estoppel is asserted." *Brown v. Taylor,* 120 N.M. 302, 306, 901 P.2d 720, 724 (1995). To establish waiver by estoppel, the defendant must show that the party to be estopped made a misleading representation by conduct; that the defendant had an honest and reasonable belief based on that conduct that the party to be estopped would not assert a certain right under the contract; and that the defendant acted in reliance on that conduct to his or her detriment or prejudice. *Id.* at 305-306, 723-724.

Neither the actions of the Benders and their predecessors in failing to make demand for the unpaid down payment, nor the Benders' action in sending a notice of default which did not reference the unpaid balance of the down payment are sufficient to establish that the Trustee had an honest and reasonable belief that the Benders would never assert that right. The Default

12

Letter required the Purchaser to pay the amounts due for May and June of 2008, plus applicable late charges and attorneys' fees, and provided that if the Purchaser failed to pay those amounts, the Benders would "declare the whole amount remaining under the contract due and enforce payment of such, or . . .terminate the contract and retain all sums as liquidated damages." *See* Exhibit F. Neither of these things occurred. Instead, the Trustee moved to sell the Property. There is no evidence that the Purchaser or the Trustee acted in detrimental reliance on the Demand Letter in believing that the Benders would never assert their right to collect on the unpaid balance of the down payment.

Based on the foregoing, the Court concludes that the Benders are entitled to the $11,500.00 held in trust representing the unpaid balance of the down payment under the Real Estate Contract. An order consistent with this Memorandum Opinion will be entered.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: January 15, 2010

COPY TO:

George Dave Giddens
Attorney for Chapter 7 Trustee
10400 Academy, Suite 350
Albuquerque, NM 87111

Kevin D. Hammar
Attorney for the Benders
1212 Pennsylvania NE
Albuquerque, NM 87110

Clifford C. Gramer, Jr.
Attorney for Stan Samuels and North Country Real Estate, Inc.
3733 Eubank Blvd. NE
Albuquerque, NM 87111